NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>  v.<br><br>ERIC GUZMAN,<br><br>    Defendant. | Case No. 2:19-cr-00431 (BRM)<br><br>**AMENDED OPINION** |

**MARTINOTTI, DISTRICT JUDGE**

  Before this Court is Defendant Eric Guzman's ("Guzman") Motion for Compassionate Release pursuant to the First Step Act, 18 U.S.C. § 3582(c)(1)(A), 18 U.S.C. § 3624(c) and the Coronavirus Aid, Relief, and Economic Security Act of 2020 (ECF No. 51) and Motion for Compassionate Release/Reconsideration pursuant to the First Step Act, 18 U.S.C. § 3582(c)(1)(A) (ECF No. 54) (collectively, the "Motion"). Plaintiff, the United States of America (the "Government"), filed an opposition to Guzman's Motion. (ECF No. 63.) Guzman filed a reply. (ECF Nos. 64, 65.) Following oral argument on November 8, 2021 (ECF No. 66), the parties filed supplemental briefs pursuant to the Court's request. (ECF Nos. 67, 68.) Having reviewed the parties' submissions filed in connection with the Motion and having heard oral argument pursuant to Federal Rule of Civil Procedure 78(a), for the reasons set forth below and for good cause having been shown, Guzman's Motion is **DENIED**.

  **I.**  **BACKGROUND**

  On June 18, 2020, Guzman pleaded guilty to a one-count Information, which charged that, from on or about August 2018 through on or about November 2018, Guzman knowingly and

1

intentionally conspired to distribute and possess with intent to distribute a controlled substance in violation of 21 U.S.C. § 841 and 21 U.S.C. § 846. (ECF Nos. 32, 33.) The Court imposed a sentence of seventy-two months of imprisonment and five years of supervised release. (J. Jan 15, 2020 (ECF No. 45).) Guzman is presently serving his sentence at FCI Fort Dix in New Jersey.[1] (ECF No. 53 at 1.)

Guzman has taken several educational classes while in custody. (Def.'s Nov. 19, 2021 Supp. Br., Ex. B (ECF No. 67 at 8–10).) Guzman's disciplinary record shows one infraction during his first year in custody for possessing a hazardous tool. (Pl.'s Opp. Br., Ex. A (ECF No. 63-1).) In addition, Guzman's medical records state he was found to have five doxepin pills in his cell when he was prescribed that medication "on pill line for direct observed therapy" as well as fourteen prednisone tablets in his cell. (Pl.'s Opp. Br., Ex. B (ECF No. 63-3) at 76.) These medications were confiscated, and the doxepin was discontinued "due to its misuse." (*Id.*)

In the months leading up to his incarceration, Guzman underwent surgery for an umbilical hernia repair and a deviated septum. (ECF No. 63-3 at 40.) At the time of this Motion's filing, he was 34 years old. (ECF No. 51 at 11.) His medical records report food allergies and a history of asthma. (ECF No. 63-3 at 149.) For his existing conditions, Guzman has been prescribed acetaminophen, albuterol inhaler, doxepin, prednisone, and diphenhydramine. (ECF No. 54 at 2; ECF No. 63-3 at 225–28.) His asthma diagnosis is described in his medical records by ICD-10 code J45909 (ECF No. 63-3 at 138) which is, according to the Centers for Disease Control and Prevention ("CDC"), "unspecified asthma, uncomplicated."[2] On January 5, 2021, Guzman tested

---

[1] When Guzman filed the Motion, he was incarcerated in FCI Schuykill in Pennsylvania, but he was transferred to FCI Fort Dix while the Motion was pending. (ECF Nos. 51, 53.)

[2] *See* https://www.cdc.gov/asthma/data-analysis-guidance/ICD-9-CM-ICD-10-CM.htm (last visited Dec. 29, 2021).

positive for COVID-19. (ECF No. 63-3 at 222.) His medical records indicate he was isolated for ten days and had recovered by January 21, 2021. (*Id.* at 176.) On March 24, 2021, the Federal Bureau of Prisons ("BOP") offered the Pfizer vaccine to Guzman. (*Id.* at 223.) He declined it. (*Id.*)

On February 26, 2021, Guzman filed, *pro se*, a motion for compassionate release. (ECF No. 51.) On June 1, 2021, he filed a letter with supplemental information. (ECF No. 53.) On June 8, 2021, he filed a second motion for compassionate release with additional information in further support of the first motion. (ECF No. 54.) He filed a supplemental letter on June 10, 2021. (ECF No. 55.) Guzman was appointed counsel on June 16, 2021. (ECF No. 56.) On October 8, 2021, Guzman, through counsel, filed a supplement to the previous submissions. (ECF No. 58.) On October 22, 2021, the Government filed an opposition. (ECF No. 63.) Guzman filed a reply to the Government's opposition on October 28, 2021. (ECF No. 64.) On November 1, 2021, Guzman filed a supplement to his reply. (ECF No. 65.) On November 8, 2021, following oral argument, the Court reserved decision and ordered supplemental briefing regarding Guzman's disciplinary infractions. (ECF No. 66.) The parties submitted supplemental briefing on November 19, 2021 (ECF Nos. 67, 68.)

## II.     LEGAL STANDARD

A district court may modify a sentence of imprisonment only in "limited circumstances." *Dillon v. United States*, 560 U.S. 817, 824 (2010). One such circumstance is a compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A). The statute, as amended by the First Step Act of 2018, allows a motion for such relief to be brought by either the Director of the BOP or by defendants after exhausting their administrative remedies. 18 U.S.C. § 3582(c)(1)(A)(i); *United States v. Raia*, 954 F.3d 594, 595 (3d Cir. 2020). A court may reduce a sentence if the Court finds the following: (1) there are "extraordinary and compelling reasons" which warrant a reduction; (2)

the reduction would be "consistent with applicable policy statements issued by the Sentencing Commission"; and (3) the applicable sentencing factors under 18 U.S.C. § 3553(a) indicate reducing the sentence would be appropriate. 18 U.S.C. § 3582(c)(1)(A).

The United States Sentencing Commission has promulgated a policy statement, in relevant part, allowing a court to grant compassionate release or a sentence reduction upon a finding of (i) extraordinary and compelling reasons; (ii) the defendant is not a danger to the safety of others or to the community; and (iii) release from custody complies with the Section 3553(a) factors, to the extent applicable ("Policy Statement"). *United States v. Williams*, No. 17-0379, 2021 U.S. Dist. LEXIS 1261, at *3 (D.N.J. Jan. 4, 2021) (citing U.S. SENTENCING GUIDELINES MANUAL ("U.S.S.G.") § 1B1.13 (U.S. Sentencing Comm'n 2018)).

Neither Section 3582(c)(1)(A) nor the Policy Statement define the key terms "extraordinary and compelling," "apparently providing courts with some flexibility and discretion to consider the unique circumstances of a motion for compassionate release." *United States v. Batista*, No. 18-415, 2020 U.S. Dist. LEXIS 139068, at *4 (D.N.J. Aug. 5, 2020) (citing *United States v. Rodriguez*, 451 F. Supp. 3d 392, 397 (E.D. Pa. 2020)). The Sentencing Commission has defined the term "under the previous version of section 3582(c)(1)(A)," but it has not "updated its Policy Statement since the passage of the First Step Act." *United States v. Alexander*, No. 19-32, 2020 U.S. Dist. LEXIS 85609, at *6 (D.N.J. May 15, 2020) (citing *Rodriguez*, 451 F. Supp. 3d at 397). Nevertheless, "the present Policy Statement provides useful guidance for district courts in identifying extraordinary and compelling reasons for a defendant's eligibility for compassionate release." *United States v. Gwaltney*, No. 17-00381, 2020 U.S. Dist. LEXIS 186893, at *4–5 (D.N.J. Oct. 8, 2020) (citations omitted).

"The Sentencing Commission's Policy Statement provides that a defendant may demonstrate extraordinary and compelling reasons for compassionate release based on: (1) the medical condition of the defendant; (2) the age of the defendant; (3) the defendant's family circumstances; or (4) for 'other reasons.'" *Id.*, at *5 (citing U.S.S.G. § 1B1.13 cmt. n.1). The defendant's "[m]edical [c]ondition," constitutes an extraordinary and compelling reason when:

> (i) The defendant is suffering from a terminal illness . . . ; [or]
>
> (ii) The defendant is—
>
>> (I) suffering from a serious physical or medical condition,
>>
>> (II) suffering from a serious functional or cognitive impairment, or
>>
>> (III) experiencing deteriorating physical or mental health because of the aging process,
>
> that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

U.S.S.G. § 1B1.13 cmt. n.1(A).

### III.  DECISION

Guzman argues that, having already contracted COVID-19 while incarcerated, he is at risk of reinfection, and, because of his medical conditions, is at heightened risk of severe illness upon reinfection. (ECF No. 58 at 1–2.) He contends he cannot be vaccinated against COVID-19 while in custody because the medical treatment available to him at Fort Dix is inadequate to address any allergic reaction he might have to the vaccine. (*Id.* at 1–2.)

Guzman claims to suffer from asthma, respiratory issues, gastrointestinal issues, abdominal pain, chest pain, and severe allergic responses including diaphoresis, urticaria,

5

pruritus, tachycardia, and tachypnea.³ (ECF No. 54 at 2; ECF No. 58 at 2.) Guzman alleges he frequently required medical attention for these conditions prior to his incarceration and, in support of this claim, submits a letter from his wife stating Guzman was "in and out of hospitals with his conditions," used a nebulizer each night, and had an EpiPen. (ECF No. 58 at 2.) Guzman contends that since his incarceration, "efforts by the BOP to accommodate his allergies have been slow with no consistent changes made to his diet to combat the allergic reactions." (ECF No. 54 at 2.) Guzman included with his supplemental briefing a letter from Kunwar Kaur, MD, an independent physician to whom Guzman provided his medical records, which states "Given [Guzman's] history of multiple allergies/atopy, COVID-19 vaccination was deferred." (ECF No. 58 at 2; Def.'s Supp. Br. Oct. 8, 2021, Ex. C (ECF No. 58-3).) In his reply brief, Guzman reiterates he has "severe allergic reactions to basic things such as food and other simple medications" and claims "[h]e was advised by the BOP medical staff, NOT to take the vaccine because of these conditions[.]" (ECF No. 64 at 1.) He states he would take the vaccine if released because the medical treatment available to him when not in custody would be capable of addressing any allergic reaction he may experience. (*Id.*) He further claims he is on immunosuppressant medications that "place [him] at even greater risk." (*Id.* at 2.)

The Government argues Guzman does not present an "extraordinary reason" for compassionate release because he was offered a COVID-19 vaccine and refused it. (ECF No. 63 at 11.) The Government challenges Dr. Kaur's letter because, while it states "vaccination was deferred," it does not state that, in her medical opinion, Guzman should refrain from vaccination. (*Id*. at 11–12.) The Government further argues such an opinion would contradict the CDC's

---

³ Merriam Webster defines diaphoresis as "perspiration," urticaria as "hives," pruritus as "itch", tachycardia as "rapid heart rate," and tachypnea as "abnormally rapid breathing." https://www.merriam-webster.com/dictionary (last visited Dec. 29, 2021).

recommendation to vaccinate individuals with allergies unrelated to vaccine allergies or injectable medications (*Id.* at 12 (citing https://www.cdc.gov/coronavirus/2019-ncov/vaccines/recommendations/specific-groups/allergies.html).) The Government contends Guzman's medical history shows insect and food allergies, and he "has presented no claims, and his medical records show no evidence, that he is allergic to the ingredients of any COVID-19 vaccine brand or the specified related chemicals." (*Id.*) The Government claims "compassionate release is not warranted based on the threat of COVID-19 alone" once a vaccine has been made available to an inmate. (*Id.* at 13.) The Government also argues Guzman's conditions do not place him at heightened risk from COVID-19. (*Id.* at 18.) The Government contends that although "moderate to severe" asthma is identified by the CDC as a risk factor for severe COVID-19 illness, Guzman's diagnosis is ICD-10 code "J45909" "uncomplicated" asthma. (*Id.* at 18–19.) The Government also argues Guzman contracted COVID-19 and recovered, which appears to diminish the risk to Guzman and is further proof compassionate release is not warranted. (*Id.* at 20.)

    **A.**    **Exhaustion of Remedies**

The parties agree Guzman satisfied the statutory exhaustion requirement.[4] (ECF No. 58 at 1; ECF No. 63 at 2.) The Court, then, turns to the substance of the Motion.

    **B.**    **"Extraordinary and Compelling Reasons" and the Policy Statement**

There are two components to the "extraordinary and compelling reasons" inquiry: "(a) identification of a medical condition that renders the defendant particularly vulnerable to serious

---

[4] Section 3582(c)(1)(A) provides a court entertain a motion for compassionate release only "upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility[.]" *See United States v. Epstein*, No. 14-287, 2020 U.S. Dist. LEXIS 62833, at *4–5 (D.N.J. Apr. 9, 2020) (quoting 18 U.S.C. § 3582(c)).

consequences if infected with COVID-19; and (b) the likelihood of COVID-19 infection, with particular reference to conditions in the institution in which the defendant is incarcerated." *United States v. Moore*, No. 19-101, 2020 U.S. Dist. LEXIS 132220, at *7 (D.N.J. July 27, 2020).

### 1. Guzman's Has Not Identified a Terminal Illness

As an initial matter, Guzman has not identified a "terminal illness" under the Sentencing Commission's Policy Statement. U.S.S.G. § 1B1.13 cmt. n.1(A)(i).[5] A "terminal illness" that constitutes an extraordinary and compelling reason for release means "a serious and advanced illness with an end of life trajectory," such as "metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia." *Id.* Here, Guzman has not made such a showing.

### 2. Guzman's COVID-19 Vaccine Status Is a Neutral Factor

The Government cites cases standing for the proposition that a defendant's refusal of a COVID-19 vaccine weighs against a finding of extraordinary and compelling reasons for compassionate release. (ECF No. 63 at 11, 15.) *See United States v. Baeza-Vargas,* No. 10-00448-010, 2021 U.S. Dist. LEXIS 66089, at *6 (D. Ariz. Apr. 5, 2021) (collecting cases); *see also United States v. Roberts*, No. 15-502, 2021 U.S. Dist. LEXIS 242034, at *12 (D.N.J. Dec. 20, 2021) (denying compassionate release where, among other facts, the defendant declined to be vaccinated).

The Government also cites cases to support the proposition that a defendant's receipt of a COVID-19 vaccine weighs against a finding of extraordinary and compelling reasons. (*Id.* at 14.)

---

[5] The Sentencing Commission's Policy Statement found in application note 1(A)(ii) to U.S.S.G. § 1B1.13, while not binding on this Court, may be considered by the Court in its "extraordinary and compelling" analysis. *United States v. Jefferson*, No. 21-2020, 2021 U.S. App. LEXIS 28572, at *6 (3d Cir. Sep. 21, 2021) (citing *United States v. Andrews*, 12 F.4th 255, 260 (3d Cir. 2021)).

*See United States v. Wills,* No. 15-00465, 2021 U.S. Dist. LEXIS 100626, at *9 (D. Or. May 27, 2021) (collecting cases); *see also United States v. McLean*, No. 21-2301, 2021 U.S. App. LEXIS 36818, at *4 (3d Cir. Dec. 14, 2021) (concluding the district court did not abuse its discretion in denying compassionate release because the defendant's medical conditions "do not constitute an 'extraordinary and compelling' reason, especially in view of the fact that he has received a COVID vaccine").

Because courts have determined a vaccinated status and an unvaccinated status have the same result in an "extraordinary and compelling reasons" analysis, a defendant's vaccination status is a neutral factor for this Court's consideration of whether Guzman has presented extraordinary and compelling reasons warranting his early release. This is consistent with the Court's "caution to neither punish nor incentiv[ize] this Defendant or others with respect to their acceptance or refusal to receive the COVID-19 vaccine." *United States v. Casado*, No. 17-409, 2021 U.S. Dist. LEXIS 141712, at *6 (D.N.J. July 28, 2021). To that end, the Court will give neither positive nor negative undue weight to Guzman's decision to refuse the vaccine. *Id.*

### 3.    Guzman's Ability to Provide Self-Care

The Third Circuit has stated a defendant "[p]rotected by natural immunity" from a prior COVID-19 infection does not demonstrate that "continued exposure to COVID-19 still puts him at imminent risk of serious physical injury." *Garrett v. Murphy*, Nos. 20-2719, 21-2810, 2021 U.S. App. LEXIS 32385, at *25 (3d Cir. Oct. 29, 2021). Courts also generally look at CDC guidance regarding reinfection and the infection rates at the facility in which the defendant is incarcerated to determine the weight to accord a defendant's likelihood of reinfection in a compassionate release analysis. *See e.g., United States v. Alford*, No. 21-2036, 2021 U.S. App. LEXIS 36652, at *1 (3d Cir. Nov. 15, 2021) (finding district court did not abuse its discretion where it ruled the defendant's "health conditions and the pandemic, as well as his lingering symptoms after having contracted

9

COVID-19, did not constitute extraordinary and compelling reasons for his release" because "there was no evidence as to whether he faces a risk of grave illness or death if he is reinfected with COVID-19, and . . . the CDC had reported that reinfection was rare"); *United States v. Reed*, No. 13-787-3, 2021 U.S. Dist. LEXIS 30532, at *6 (D.N.J. Feb. 18, 2021) (finding the defendant's concern for reinfection was not an extraordinary and compelling reason for compassionate release because of the low infection rate at the prison).

With respect to "natural immunity," Guzman has already been infected with and recovered from COVID-19. (ECF No. 63-3 at 176.) Guzman's general concern regarding possible reinfection is understandable but does not alone constitute an extraordinary and compelling reason for his release at this time. *Garrett*, 2021 U.S. App. LEXIS 32385, at *25.

According to the CDC, "[c]ases of reinfection with COVID-19 have been reported, but remain rare."[6] Therefore, the CDC's current guidance weighs against a finding of an extraordinary and compelling reason for early release. *Alford*, 2021 U.S. App. LEXIS 36652, at *1.

As to the circumstances within FCI Fort Dix, both Guzman and the Government present several arguments. On his part, Guzman contends the conditions at FCI Fort Dix increase his risk of severe illness from COVID-19 reinfection because of the high number of cases reported at the prison. (ECF No. 58 at 3–5.) He argues the conditions of confinement prohibit social distancing. (*Id.* at 4.) He notes the original strain afflicted 1,750 inmates and staff, and the prison's inadequate response to the virus received attention from state law makers. (*Id.*) He cites to a number of cases from early in the pandemic in which courts recognized the hazardous conditions at FCI Fort Dix. (*Id.* at 4, n.1.) The Government counters BOP has taken adequate steps to monitor its inmate

---

[6] CDC, *Reinfection with COVID-19*, https://www.cdc.gov/coronavirus/2019-ncov/your-health/reinfection.html (last visited Dec. 29, 2021).

10

population for symptoms, quarantined the inmates tested positive for COVID-19, and designated selected inmates for home confinement. (ECF No. 63 at 3–5.) The Government contends "positive cases in all BOP institutions has been sharply declining for months, with nearly all institutions currently reporting no cases or case tallies in the single digits," including FCI Fort Dix. (*Id.* at 4.)

The Court concludes that, compared to the high rate of infection at FCI Fort Dix found in the early-pandemic cases cited by Guzman, the latest infection rates at FCI Fort Dix are relatively low. As of December 29, 2021, FCI Fort Dix has zero active inmate cases and six active staff cases.[7] Additionally, of the 3,328 inmates housed at FCI Fort Dix, 2,198 (approximately 66% of the total inmate population) have been vaccinated. Further, 298 staff have been vaccinated. This does not suggest a significant risk of COVID-19 infection at FCI Fort Dix at this time. *See Roberts*, 2021 U.S. Dist. LEXIS 242034, at *12 ("[W]ith zero active virus cases among inmates, only two active cases among staff, and 2,198 inmates fully vaccinated of its 3,328-inmate population, Covid-19 does not currently present an extraordinary threat to Defendant at FCI Fort Dix."); *United States v. Paulino*, No. 18-292, 2021 U.S. Dist. LEXIS 218994, at *5–6 (D.N.J. Nov. 12, 2021) (finding the defendant had "not demonstrated 'extraordinary and compelling reasons' warranting release" where "there are 7 positive prisoner cases and 5 positive staff cases at Fort Dix, a large institution, which represents a dramatic improvement from earlier in the pandemic"). Accordingly, the risk presented at FCI Fort Dix at this time does not present an extraordinary and compelling reason for Guzman's release.

Guzman's concern that his specific medical conditions place him at increased risk of severe illness from COVID-19 reinfection (ECF No. 58 at 2–3) also does not constitute an extraordinary or compelling reason for compassionate release. Courts generally refer to the CDC's list of

---

[7] BOP, *COVID-19 Update*, https://www.bop.gov/coronavirus/ (last visited Dec. 29, 2021).

underlying medical conditions that place a person at higher risk of severe illness from COVID-19 in determining whether extraordinary and compelling reasons exist in compassionate release cases. *See e.g., United States v. Jenkins*, No. 13-646, 2021 U.S. Dist. LEXIS 235734, at *12 (D.N.J. Dec. 9, 2021) (referring to CDC list to assess the defendant's asthma and prediabetic condition in evaluating "extraordinary and compelling reasons" for compassionate release).

Of the list of medical conditions from which Guzman claims to suffer (ECF No. 54 at 2; ECF No. 58 at 2), only two are on the CDC's list: asthma and an immunocompromised state.[8] Asthma increases an individual's risk of severe illness from COVID-19 "if its moderate to severe." Guzman has not demonstrated his asthma has been diagnosed as "moderate to severe." Therefore, his asthma is a neutral factor in the Court's "extraordinary and compelling reasons" analysis. Guzman has identified medications which compromise his immune system. Accordingly, this factor weighs in favor of his request. However, Guzman has already contracted COVID-19 and recovered without suffering severe illness. Based on the foregoing, a balance of the factors weighs against a finding of extraordinary and compelling reasons for compassionate release.

To the extent Guzman's medical conditions may increase his risk of severe illness from COVID-19, the Court notes the BOP has offered Guzman an opportunity to reduce his risk. The CDC has stated vaccination reduces the risks of contracting COVID-19 and experiencing its potentially severe complications.[9] The CDC recommends vaccination for individuals such as Guzman with "a history of severe allergic reactions not related to vaccines or injectable medications—such as food, pet, venom, environmental, or latex allergies . . . [and p]eople with a

---

[8] CDC, *Medical Conditions*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited Dec. 29, 2021).

[9] CDC, *COVID-19 Vaccines Work*, https://www.cdc.gov/coronavirus/2019-ncov/vaccines/effectiveness/work.html (last visited Dec. 29, 2021).

12

history of allergies to oral medications[.]"[10] Guzman has not shown he is in the category of persons for whom the CDC does not recommend vaccination, *i.e.*, individuals who have had "a severe allergic reaction or an immediate allergic reaction" to any ingredient in a COVID-19 vaccine.[11]

Guzman is not opposed to taking the vaccine.[12] (ECF No. 64 at 1.) Rather, he is skeptical of the medical attention he would receive from the BOP if administered the vaccine while incarcerated. (*Id.*) The Government contends the CDC and the BOP are aligned in their policies for administration of the vaccine to individuals with a history of anaphylaxis. (ECF No. 68 at 1–2.) The Court finds Guzman's fear of unmonitored anaphylaxis is not an extraordinary and compelling reason for compassionate release. *See United States v. Hubbard*, No. 17-173, 2021 U.S. Dist. LEXIS 218845, at *9 (D. Conn. Nov. 12, 2021) (finding fear of unmonitored anaphylaxis is not a reasonable basis for refusing the vaccine or for supporting the defendant's claim of extraordinary and compelling circumstances). Both the CDC and the BOP recommend a 30-minute observation period after vaccination for individuals who have a history of anaphylaxis due to any cause.[13]

---

[10] CDC, *COVID-19 Vaccines for People with Allergies*, https://www.cdc.gov/coronavirus/2019-ncov/vaccines/recommendations/specific-groups/allergies.html (last visited Dec. 29, 2021).

[11] CDC, *COVID-19 Vaccines for People with Allergies*, https://www.cdc.gov/coronavirus/2019-ncov/vaccines/recommendations/specific-groups/allergies.html (last visited Dec. 29, 2021).

[12] Guzman also states in his reply brief that he was advised by BOP medical staff not to take the vaccine. (ECF No. 64 at 1.) Guzman's medical records make no reference to this purported medical advice from the BOP staff. Nonetheless, the fact it may not be recommended by health care providers for Guzman to receive the vaccine does not change the "extraordinary and compelling reasons" analysis because the Court's assessment is made without according positive or negative weight to a defendant's vaccination status.

[13] *Compare* CDC, *Interim Considerations: Preparing for the Potential Management of Anaphylaxis after COVID-19 Vaccination*, https://www.cdc.gov/vaccines/covid-19/clinical-considerations/managing-anaphylaxis.html (last visited Dec. 29, 2021) *with* BOP, *COVID-19*

Guzman's concern with vaccination while incarcerated is centered on his belief that his medical conditions are not adequately treated in prison. "[C]ourts have denied relief to inmates with" medical conditions presenting an increased risk for severe illness or complications from COVID-19 "if BOP is meeting their medical needs and has reasonable measures in place to prevent the spread of the virus." *United States v. Adams*, No. 00-00697, 2020 U.S. Dist. LEXIS 190133 at *14 (D.N.J. Oct. 14, 2020) (citations omitted); *see also United States v. Gore*, No. 10-250, 2020 U.S. Dist. LEXIS 122109, at *12–14 (D.N.J. July 13, 2020) (finding the defendant's obesity, asthma, and other factors did not constitute "extraordinary and compelling reasons that would justify his compassionate release," when the facility was providing adequate care). The Court finds Guzman's medical records indicate his asthma and allergies are being appropriately managed and treated by the BOP medical staff and are controlled through the use of prescription medication and dietary recommendations.

The Court notes Guzman's medical records show he has received medical attention nearly every month of his year-long incarceration and, often, he receives medical attention multiple times a month.[14] This factor cuts both ways. On the one hand, it suggests he is receiving adequate medical attention as the need arises. On the other hand, his frequent visits suggest his medical conditions have not been cured in the prison environment. The Court is sympathetic to Guzman's

---

*Vaccine Guidance Federal Bureau of Prisons Clinical Guidance*, https://www.bop.gov/resources/pdfs/2021_covid19_vaccine.pdf (last updated Jan. 4, 2021).

[14] In Guzman's reply brief and supplemental brief, he argues he submitted a written request for medical attention related to his allergies which took over three months for the BOP to address. (ECF No. 64 at 2, ECF No. 65.) The Court appreciates Guzman's concerns with this delay. However, as noted *supra*, Guzman's medical records indicate his asthma and allergies preceded his incarceration. Since his incarceration, he is in regular contact with BOP medical staff and receives medications and instructions for mitigating his reactions. Accordingly, the delay in receiving a written response from the BOP, or in seeing an allergy specialist, alone, is not a reason to find "extraordinary and compelling reasons" exist for compassionate release.

persistent discomfort over the last year. However, the Court has been made well-aware from Guzman's submissions that, prior to his incarceration, he required frequent medical interventions. Because his chronic ailments precede his incarceration, the balance weighs against the argument the medical staff at FCI Fort Dix has somehow failed Guzman in treating his medical conditions.

Because Guzman has not demonstrated extraordinary and compelling reasons for compassionate release exist at this time, the Motion is **DENIED**.

### C.    Section 3553(a) Factors

Even if the Court were to find extraordinary and compelling reasons were present, Guzman has not demonstrated early release would be appropriate under Section 3553(a). 18 U.S.C. § 3582(c)(1)(A).

Guzman argues his personal history and characteristics are considerations for the Court under Section 3553(a). (ECF No. 58 at 5–6.) He contends he is not a threat to society, has a supportive family at home, has strong ties to the community, and has a history of compliance while on supervision. (*Id*. at 5.) In support of this argument, he submits letters from family and friends. (*Id.*) Guzman also argues he was never convicted of a violent crime and has no significant history other than a 2006 narcotics conviction for which he served a jail sentence. (*Id*.) He argues the disciplinary issues he has had while incarcerated "were minor violations of institutional rules that have no bearing on this compassionate release application." (ECF No. 64 at 2.) He adds, with respect to his behavior while incarcerated, he "is partaking in as many education classes as he can to better himself while in custody." (ECF No. 67 at 1–2.)

The Government counters several factors weigh against early release: (1) Guzman's narcotics crime is a serious crime presenting a danger to the community, and he was recorded on a number of phone calls committing this crime three years ago, when he was 32 years old; (2) he

has a prior record of criminal conduct—two previous convictions for possession with intent to distribute a controlled substance in a school zone, and four additional arrests resulting in fines; (3) he has two disciplinary violations in the short time he has been incarcerated—possessing a cell phone SIM card[15] and diverting medication to his cell—which should not be considered "minor" infractions.[16] (ECF No. 63 at 22.) The Government suggests releasing Guzman when he has served such a small portion of his sentence for a serious drug crime does not reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense. (*Id.*)

The Court finds the applicable sentencing factors under Section 3553(a) do not indicate granting Guzman's motion for compassionate release, thereby reducing his sentence, would be appropriate. Guzman's sentence was imposed in January 2020 after the Court's consideration of the Section 3553(a) factors. (ECF No. 45.) Guzman has not demonstrated any significant changes in facts or law since his sentencing that would warrant a reduction in his sentence at this time. Rather, given his criminal history with narcotics and his disciplinary issues in the short time of his incarceration—which includes diverting his prescription medications to his cell when they were to be taken "on the pill line"—incarceration for less than fifteen months (a reduction of approximately 80% from his sentence of seventy-two months) would provide inadequate

---

[15] Federal prisoners serving a term of imprisonment of more than one year have a statutory right to receive credit toward their sentence for good conduct. *See* 18 U.S.C. § 3624(b); 28 C.F.R. § 523.20. In response to the Court's request at oral argument regarding the impact of Guzman's disciplinary issues on his good time credits, the Government filed a supplemental brief. The Government stated Guzman's possession of a cellular phone SIM card is "an offense classified by the Code of Federal Regulations as one of the 'Greatest Severity Level Prohibited Acts' under the Inmate Discipline Program." (ECF No. 68 at 3.) The Government further stated that, "[a]s a consequence of his offense, Mr. Guzman received 41 days of disallowed good time credit . . . . In addition, the defendant received 20 days of disciplinary segregation . . . , and six months of lost privileges for social phone calls . . . ." (*Id.*)

[16] As of the date of this Opinion, Guzman has been incarcerated approximately fourteen months, roughly 20% of his sentence.

deterrence. *See* 18 U.S.C. § 3553(a)(2)(B). Guzman's court-imposed sentence must be served to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment. Because Guzman has not demonstrated the applicable sentencing factors under Section 3553(a) indicate reducing his sentence would be appropriate, the Motion is **DENIED**.

IV. CONCLUSION

For the reasons set forth above, Guzman's Motion is **DENIED**. An appropriate order follows.

*/s/ Brian R. Martinotti*
**HON. BRIAN R. MARTINOTTI**
UNITED STATES DISTRICT JUDGE

Dated: January 26, 2022